# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

| | |
|---|---|
| **LAURA JONES**, personally and as | ) |
| legal guardian of C.J. | |
| 1214 Chestnut Drive | ) |
| Ashtabula, OH 44004-2004 | |
| | ) |
| and | |
| | ) |
| **JAMES HOCKADAY**, personally | ) |
| and as a parent of C.J. | ) |
| 1214 Chestnut Drive | ) |
| Ashtabula, OH 44004-2004 | ) |
| | ) |
| **Plaintiffs,** | |
| **-vs-** | ) |
| | ) |
| **MELISSA D. WATSON**, personally | ) |
| and in her Official Capacity as | |
| Superintendent of the | ) |
| Ashtabula Area City School District | |
| 2639 West 13th Street | ) |
| Ashtabula, OH 44004 | |
| | ) |
| and | |
| | ) |
| **LORI WITT**, personally and in her | |
| Official Capacity as Director of Pupil | ) |
| Services of the Ashtabula Area City | |
| School District | ) |

**V E R I F I E D   C O M P L A I N T**

Trial by Jury Endorsed Hereon

1

2639 West 13th Street
Ashtabula, OH 44004                    )

and                    )

**ASHTABULA AREA CITY**                    )
**SCHOOL DISTRICT**
2639 West 13th Street                    )
Ashtabula, OH 44004
)

and                    )

)

**STEVE J. CANDELA**, in his                    
Official Capacity Only as a Board                    )
Member of
The Ashtabula Area City School                    )
District
2639 West 13th Street                    )
Ashtabula, OH 44004
)

and                    )

)

**JULIUS PETRO**, in his Official                    
Capacity Only as a Board Member of                    )
The Ashtabula Area City School
District                    )
2639 West 13th Street
Ashtabula, OH 44004                    )

and                    )

**DEBRA BARRICKMAN**, in her                    )
Official Capacity Only as a Board
Member of                    )
The Ashtabula Area City School
District                    )
2639 West 13th Street
Ashtabula, OH 44004                    )

and                    )

**JAMES BRADY. SR.** in his Official                    )
Capacity Only as a Board Member of
The Ashtabula Area City School                    )

2

District
    2639 West 13th Street            )
    Ashtabula, OH 44004

                                                )

        and                                     )

**JAMES HUDSON**, in his Official              )
Capacity Only as a Board Member of
The Ashtabula Area City School
District
2639 West 13th Street
        Ashtabula, OH 44004

_____    **Defendants**.

## INTRODUCTION

1. This is an action by parents of an eight-year-old autistic child who has been transported to an appropriate educational facility outside defendant Ashtabula Area City School District in order to accommodate his disability.

2. Because defendants intentionally seek to rescind the transportation provider familiar to the child since summer, 2017 in retaliation for the child's parents' complaints about Defendants' non-compliance with, among other laws, IDEA, the Rehabilitation Act and the ADA and the irreparable harm the child will suffer, they seek emergency relief.

3. This action seeks declarative, injunctive and affirmative injunctive relief and damages for intentionally denying his full and equal enjoyment of the benefits of and participation under the Americans with Disabilities Act of 1990 ("ADA") and in retaliation for the exercise of their rights, 42 U.S.C. § 12203 and 28 C.F.R. §35.134, under Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. §794(a) and 29 C.F.R.  §33.13, the anti-retaliation provisions of the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.*, the Ohio Disabilities in Education Act, Ohio Revised Code Chapter 3433, and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400, *et seq*.

4. The child of the plaintiffs is an 8-year-old who has been diagnosed with Autism Spectrum Disorder, Dyslexia, Dyspraxia and ADHD.

5. Although Defendants know that familiarity and regularity are a critical part of the therapy for autism, and although the plaintiffs/parents have complained about Defendants' non-compliance with the Individuals with Disabilities Education Act (IDEA), Defendants know they will and intend to inflict irreparable harm on the child with a plan they intend to implement during the week of October 2, 2017 to switch to an unfamiliar transportation provider from Ms. Dana Scott who has been providing exclusive special transportation services since the summer of 2017 up to Monday, October 2, 2017.

6. The acts and conduct of the defendants with the planned removal of a exclusive familiar transportation provider scheduled for the week of October 2, 2017 are in retaliation for both constitutionally and federal statutorily protected rights the child and his parents have.

7. The intentional acts and conduct of the Defendants will cause irreparable injury and harm to the child in violation of Individuals with Disabilities

Education Act (IDEA), 20 U.S.C. §§1400, *et seq*., the ADA, 42 U.S.C. § 12131 and its implementing regulations, 28 C.F.R. §§ 36.201(1), 36.202, 36.301(a), 36.302, the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and 29 C.F.R. §33.13, and in violation of rights insured under the Ohio Civil Rights Act, Ohio Revised Code § 4112.02(G) and in violation of First Amendment and due process rights insured under the Fourteenth Amendment to the Constitution of the United States, enforced through the Civil Rights Act of 1871, 42 U.S.C. §1983.

## CLAIMS AND JURISDICTION

8. This action is initiated pursuant to Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400, *et seq*., the ADA, 42 U.S.C. § 12131 and its implementing regulations, 28 C.F.R. §§ 36.201(1), 36.202, 36.301(a), and 36.302, the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and 29 C.F.R. §33.13, and in violation of rights insured under the Ohio Civil Rights Act, Ohio Revised Code § 4112.02(G), in violation of rights insured under Chapter 3323 of the Ohio Revised Code, the Ohio Education of Children with Disabilities Act, and in violation of First Amendment and due process rights insured under the Fourteenth Amendment to the Constitution of the United States, enforced through the Civil Rights Act of 1871, 42 U.S.C. §1983. In addition to injunctive relief and damages, plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

9. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and (4) and pendent state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the United States District Court for the Northern District of Ohio as all claims arise in the District, the plaintiffs reside in the District and all defendants are situated within the venue of the Northern District of Ohio.

## PARTIES

11. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

12. Plaintiffs, LAURA JONES and JAMES HOCKADAY, are the parents of C.J., reside in Ashtabula, Ohio and are citizens of the United States. They have a child who has a number of disabilities including Autism Spectrum Disorder, Dyslexia, Dyspraxia and ADHD.

13. Defendant MELISSA D. WATSON is the Superintendent of the Ashtabula Area City School District and is responsible for the implementation of all policies, programs, practices, acts and conduct under color of state law, particularly the laws of the United States which mandate certain duties on public school districts to insure equality and appropriate accommodations to children with disabilities.

14. Defendant LORI WITT is the Director of Pupil Services of the Ashtabula Area City School District and is responsible for the implementation of all policies, programs, practices, acts and conduct under color of state law with

respect to transportation of children with disabilities and is otherwise responsible to comport with the laws of the United States which mandate certain duties on public school districts to insure equality and appropriate accommodations to children with disabilities.

15. Defendant ASHTABULA AREA CITY SCHOOL DISTRICT is organized under the laws of the State of Ohio and is obligated to fulfill the mandate of the laws of the United States with respect to insuring equality and providing appropriate accommodations to children with disabilities.

16. Defendants STEVE J. CANDELA, JULIUS PETRO, DEBRA BARRICKMAN, JAMES BRADY, SR. and JAMES HUDSON comprise the Ashtabula Area City School District Board and are responsible for the creation of all policies, programs, practices, acts and conduct under color of state law, particularly the laws of the United States which mandate certain duties on public school districts to insure equality and appropriate accommodations to children with disabilities.

## <u>FACTS</u>

17. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

18. Plaintiffs' son was born ███████████

19. Defendants' records establish that he is "a lovable boy who likes to learn about math and reading" because he says he is a "smart boy with a big brain."

20. In 2014 Cleveland Clinic's Lerner Institute, University Hospitals and Pittsburgh Children's Hospital confirmed a diagnosis of Autism, ADHD, Dyslexia and Dyspraxia.

21. On February 16, 2017, under IDEA and other federal laws, defendants created an Individualized Education Program ("IEP") which concluded that the District should investigate "other settings" which would accommodate the child's disabilities because defendant Ashtabula Area City Schools District ("AACS") did not have staff or facilities to address the needs of the child.

22. Plaintiffs have continually emphasized that familiarity and regularity with respect to testing and with respect to setting are critical in dealing with an autistic child.

23. On March 29, 2017, defendant Lori Witt notified plaintiffs that defendant Ashtabula Area School District will send the child to a specialized school for the summer Extended School Year Services without any request having been made by the plaintiffs and will evaluate the results with a placement for the academic school year a specialized school in order to provide for attendance  for 2017-2018.

24. On March 30, 2017, defendants confirmed the child's attendance to a non-AACS school during the summer of 2017 and transportation.

25. Ms. Scott, a caring, attentive driver, easily facilitated the requirements of familiarity and regularity necessary to avoid extreme chaos which is a

symptomatic response of a child with Autism and who had a close physical appearance to the child's mother.

26. Defendants Witt and Ashtabula Area School district duly registered the child for the academic summer program at the specialized school.

27. On May 18, 2017, defendant Lori Witt received registration forms for the academic summer program at the specialized school.

28. On July 6, 2017, the child was accepted for the 2017-2018 school year at the specialized school.

29. On July 31, 2017,  a purchase order signed by the defendant Watson  and received thereafter by the specialized school that tuition was paid for the 2017-2018 school year.

30. On August 3, 2017, defendants reported that "[t]he school district propose[d] to change [his] current least restrictive environment to [the specialized school] for the upcoming 2017-2018 school year" because defendants' IEP team acknowledged that the public education option offered by defendants through the AACS would not be appropriate.

31. On August 3, 2017, in addition to a placement by the defendants at the specialized school, defendants changed the IEP to read that "the district is adding special transportation," but the parent would provide a booster seat.

32. Special transportation was so important that it required a change in the IEP.

33. On August 3, 2017, plaintiffs advised defendants that "consistency in personnel is vital . . . as changes in his morning can cause him great distress during the day."

34. The August 3, 2017 IEP Report identified Ms. Dana Scott as his van driver to and from the specialized school.

35. On August 3, 2017, defendant Lori Witt stated that it was a "district decision" to place the child in a specialized school.

36. Plaintiffs heralded the IEP change involving special transportation, but emphasized that the IEP change needed to recognize the severity of the consequences if the right driver is not engaged and noted in the IEP.

37. As a follow up, plaintiff Laura Jones identified errors in the August 3, 2017 IEP report (PR-01):

> The PR-01 that you sent me, dated August 3, 2017, is missing some very important detail. As you may recall, we had an extensive conversation regarding [the child] and his driver. And nothing was recorded on the document. I [o]ffered again to provide documentation, research, anything needed to validate this need. Any Autism specialist will explain this to you as well. *It's not simply an accommodation – its a need, And it is as valid for a neurodiverse student as insulin is for a diabetic.*

[Emphasis added in original]

38. Plaintiff called defendant Witt on August 14th, August 15th and August 18th to arrange to prepare the child for transportation, but received no responses.

39. On August 18, 2017, much to the consternation of the plaintiffs, defendant Witt indicated that the school district would switch the special transportation driver for the child.

40. Then, on August 21, 2017, defendant Watson contacted the plaintiff to inform her that that Ms. Dana Scott would remain the driver.

41. Continuing, on August 21, 2017, Defendant Watson then urged the plaintiff to engage in an anti-union media campaign to suggest that the union was advocating the best interests of union drivers rather than the best interests of children.

42. On August 21, 2017, Defendant Watson then urged plaintiff, because of her prominence in the community, to appear before the Board of Education to condemn the union and that plaintiff's appearance would help defendant Watson in her official capacity as Superintendent against the union.

43. On August 21, 2017, Plaintiff responded to Defendant Watson that her concern was simply her child and that she would not engage in public anti-union advocacy.

44. On August 22, 2017, plaintiff Jones requested of defendant Witt to correct information relative to the child's IEP relative to special transportation.

45. On August 22, 2017, defendants conceded that their selected alternate substitute special transportation driver "does not possess the proper credentials" to drive the child to the specialized school.

46. On August 23, 2017, Ms. Dana Scott, familiar with the child as he was with her, picked up the child in the school van for the first day of school to be transported to and from the specialized school.

47. On August 24, 2017, plaintiffs, in consultation with the child's personal physician and also with local law enforcement, expressed strong opposition to any substitute driver being held over the heads of the plaintiffs.

48. On August 31, 2017, Mark Astorino, the Interim Director of Operations for the defendants, wrote to the child's driver, advising that:

> '[T]the District is exercising its management right to assign you'

to transport the child expressly to comply with IDEA.

49. On September 1, 2017, however, in retaliation, defendants sent the plaintiffs an unprecedented document they called a "Placement Agreement" issued under color of law. **[Exhibit 1]**

**50.** The so-called "Placement Agreement" was not a placement agreement at all and was intended by the defendants to be kept secret and reversed the IDEA-driven grant to special transportation by Operations Manager Astorino. **[Exhibit 2]**

51. The secret government-generated "agreement" unlawfully switched the District selected placement to a "Parentally Selected Placement" in order to assign future tuition and transportation expenses to the plaintiffs instead of being borne by the school district.

52. The secret government-generated "agreement" unlawfully conditioned federally protected statutory rights including special transportation of the child by his parents waiving all rights under "Section 1983 of the Civil Rights Act (42 U.S.C. § 1983), 20 U.S.C. §§ 1400, et seq. (i.e., the Individuals with Disabilities Education Act and the Individuals with Disabilities Education Improvement Act), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), the Americans with Disabilities Act (42 U.S.C. §12131), and Ohio Revised Code Chapter 3323."

53. The secret government-generated agreement conditioned special transportation by unlawfully requiring plaintiffs to be subjected to a "gag" rule which prohibited discussion of disability rights with anyone.

54. The apparent consideration for the secret government-generated agreement was, if the plaintiffs failed or refused to sign, defendants would punish the plaintiffs as parents by cutting off special transportation entitlement with the familiar female driver for a male with an undisputed history of absenteeism and record of criminal charges.

55. On September 6, 2017, defendants refused plaintiffs a meeting to change the child's IEP to acknowledge defendants' modified of special transportation without any professional reflection and in absolute disregard of the child's doctor's opinion that it would harm the child.

56. On September 6, 2017, after defendants conveyed the secret government-generated agreement, defendants refused to permit the one-hour delay in school pick-up once a week so the child could attend a STEM activity.

57. On September 8, 2017, defendant Witt modified IEP information sent to her by plaintiff Jones on August 22, 2017.

58. Late Friday, September 26, 2017, defendants, in further retaliation, "rescinded" the child's regular transportation driver, Ms. Dana Scott, because plaintiff did not sign the secret agreement, knowingly placing the child at risk and providing no viable alternative to plaintiffs as parents, despite the August 31, 2017 Operations Director Astorino letter which stated that "the District [was] exercising its management right to assign" Dana Scott to transport the child in order  to comply with IDEA.

59.  Defendants knew that modifying special transportation without modify the IEP or permitting an adjustment for an autistic child would likely cause injury and that plaintiffs had no alternative remedy to defendants' edict.

60. Defendants had already been put on notice by Dr. Fleck that altering familiar and regular circumstances could be highly detrimental to the health and safety of the child, but proceeded anyhow.

61. Defendants knew and know now that driver Dana Scott is ready, willing and able to transport the child.

62. Defendants conceded on August 31st that obligations under federal law should supersede any other policy or practice.

63. Defendants have made no effort to outreach to plaintiffs for further discussion or resolution relating to the child's IEP and ignored repeated requests by plaintiffs.

64. As a result of defendants' intentional and reckless actions, plaintiffs and their child will suffer and have suffered serious and consequential damages including personal injury, pain, suffering, and emotional harm and distress.

65. The plaintiffs have suffered and continue to suffer to a certainty irreparable harm as a result of the defendants' violations of their constitutionally and federally protected rights.

66. Plaintiffs have no alternative remedy at law than to seek emergency relief to maintain the *status quo* with Dana Scott as the transportation driver of their child.

67. In balancing the rights of the parties, defendants cannot show injury by maintaining the *status quo* until a hearing may be had.

## FIRST CAUSE OF ACTION

## Violations of Rights Insured under the Americans with Disabilities Act of 1990

68. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

69. Defendants' reckless and intentional conduct in attempting to substitute a less credentialed male driver and the obvious resultant injury to an autistic child and denying the child and his parents the opportunity to participate in

15

the federally mandated program or to benefit from the goods, services, and activities provided by the defendants violates the anti-discrimination and anti-retaliation provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12203 and its implementing regulations, 28 C.F.R. §§ 36.201(1), 36.202, 36.301(a) and 36.302 and, without modifying the child's IEP, violates the anti-discrimination and anti-retaliation provisions of the Americans with Disabilities Act of 1990 in tandem with Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.*

70. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' violations of their rights.

## SECOND CAUSE OF ACTION

## Violations of Rights Insured Under the Rehabilitation Act of 1973

71. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

72. Defendants' reckless and intentional conduct in attempting to substitute a less credentialed driver and the obvious resultant injury to an autistic child and denying the child and his parents the opportunity to participate in a federal program or to benefit from the goods, services, and activities provided by the defendants in violation Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and 29 C.F.R. §33.13 and, without modifying the child's IEP, violates the anti-discrimination and anti-

16

retaliation provisions of the Rehabilitation Act of 1973 in tandem with the Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.*

73. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' violations of their rights.

## THIRD CAUSE OF ACTION

### Violations of Rights Insured Under the Ohio Civil Rights Act, Ohio Revised Code Chapter 4112

74. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

75. Defendants' reckless and intentional conduct in attempting to substitute a less credentialed driver and the obvious resultant injury to an autistic child and denying the child and his parents the opportunity to participate in a program or to benefit from the goods, services, and activities provided by the defendants in violation of the anti-discrimination and anti-retaliation provisions of the disability sections of the Ohio Civil Rights Act, Ohio Revised Code 4112,01, *et seq.* in tandem with the Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.*

76. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' violations of their rights.

## FOURTH CAUSE OF ACTION

### Violations of Rights Insured Under the Ohio Education of Children with Disabilities Act, Ohio Revised Code Chapter 3323

77. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

78. Defendants' reckless and intentional conduct in attempting to substitute a less credentialed driver and the obvious resultant injury to an autistic child and denying the child and his parents the opportunity to participate in the federally mandated program or to benefit from the goods, services, and activities provided by the defendants violates the anti-discrimination and anti-retaliation provisions of the Ohio Education of Children with Disabilities Act, and, without modifying the child's IEP, violates the anti-discrimination and anti-retaliation provisions of the Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.*

79. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' violations of their rights.

### FIFTH CAUSE OF ACTION

### Violations of Constitutionally Protected First Amendment Rights

80. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

81. Defendant Watson knew that conditioning federally protected rights as a *quid pro quo* for plaintiffs to publicly advocate an anti-union stance and the retaliatory actions in refusing to do so including a so-called "Placement Agreement" and rescinding familiar transportation for plaintiffs' autistic

child were intentional, malicious and in wanton and reckless disregard of the rights insured under the Constitution of the United States.

82. The retaliatory actions by Defendant Watson continue without any alternative legal remedy available under that injunctive relief.

83. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' violations of their rights.

## SIXTH CAUSE OF ACTION

### Violations of Rights Insured Under the Due Process Clause of the Fourteenth Amendment

84. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

85. Defendants Watson and Witt disregarded requests by plaintiff for meetings concerning plans for their autistic child and retaliated against plaintiffs when they insisted on compliance with the Individual with Disabilities Education Act (IDEA) in a fashion to deny them a meaningful hearing to protect their autistic child against arbitrary, capricious and discriminatory actions under color of law.

86. The retaliation included, but was not limited, to a secret government so-called "Placement Agreement" and rescinding familiar transportation for plaintiffs' autistic child was intentional, malicious and in wanton and reckless disregard of the rights insured under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

87. The retaliatory actions by Defendant Watson continue without any alternative legal remedy available under that injunctive relief.

88. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' violations of their rights.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Harm

89. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

90. Defendants' reckless and intentional conduct in attempting to substitute a less credentialed driver and the obvious resultant injury to an autistic child and denying the child and his parents the opportunity to participate in a program or to benefit from the goods, services, and activities provided by the defendants in violation of the anti-discrimination and anti-retaliation provisions of state and federal law is intended to intentionally inflict emotional harm.

91. Defendants' reckless, intentional and retaliatory conduct in a so-called "Placement Agreement" and in the rescission of familiar transportation for plaintiffs' autistic child were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiffs.

92. The plaintiffs have suffered and continue to suffer irreparable harm as a result of the defendants' conduct.

WHEREFORE, plaintiffs urge this Court to grant the following relief:

A.    Declare that the acts and conduct of the defendants were and continue to be in violation of rights insured under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400, *et seq.*, the ADA, 42 U.S.C. § 12131 and its implementing regulations, 28 C.F.R. §§ 36.201(1), 36.202, 36.301(a), and 36.302, the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and 29 C.F.R. §33.13, and in violation of rights insured under the Ohio Civil Rights Act, Ohio Revised Code § 4112.02(G), in violation of rights insured under Chapter 3323 of the Ohio Revised Code, the Ohio Education of Children with Disabilities Act, and in violation of rights insured under the First Amendment to the Constitution of the United States and due process rights insured under the Fourteenth Amendment to the Constitution of the United States, enforced through the Civil Rights Act of 1871, 42 U.S.C. §1983;

B.    In accordance with Rule 65 of the Federal Rules of Civil Procedure, temporarily restraining, preliminarily enjoining and permanently enjoining the defendants, individually or in concert with others, from continuing to discriminate and retaliate against the plaintiffs by making the status quo with the provider of transportation to the specialized school as acknowledged by Mark Asterino, Interim Director of Operations, on August 31, 2017 until a hearing may be had with a waiver of bond under Rule 65 (b);

C.    Enjoin the utilization of defendants' so-called "Placement Agreement" as a limitation and interference with federally mandated rights of equal educational opportunities and continued accommodations based on disability;

D.    Direct as part of injunctive relief further training of defendants and others so that the mandate of IDEA and other federal laws will be achieved;

E.    Prohibit any retaliation, direct or indirect, against the plaintiffs and their child in the future;

F.    Grant to the plaintiffs and against the defendants, individually and collectively, appropriate compensatory damages and punitive and exemplary damages against all defendants except defendant Ashtabula Area City School District;

G.    Grant to plaintiffs and against defendants statutory reasonable attorney's fees, costs and expenses.

H.    Maintain continuing jurisdiction over this matter, including relief granted, until such time as the educational process of plaintiffs' child is completed.

I.    Grant any additional relief the Court deems just and equitable in order to advance the public interest.

/s/ Avery Friedman
Avery Friedman (0006103)
AVERY FRIEDMAN & ASSOCIATES
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114-3358
PHONE (216)-621-9282
FAX (216) 621-9283
avery@lawfriedman.com

*Attorney for Plaintiffs*

## TRIAL BY JURY DEMANDED

Plaintiffs hereby demand trial by jury.

/s/ Avery Friedman
Avery Friedman

## V E R I F I C A T I O N

I, Laura Jones, one of the plaintiffs in this action and the mother of the child, hereby verify that the foregoing allegations in this complaint are true to the best of my knowledge.

_____
LAURA JONES

SWORN TO and subscribed in my presence this 3rd day of October, 2017.

_____
